IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 3:18-cv-00113 |
| COUNCIL ON ENVIRONMENTAL QUALITY, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Southern Environmental Law Center (SELC) moved for summary judgment seeking a declaration that Defendant Council on Environmental Quality (CEQ) is violating FOIA by withholding public documents and failing to make them "promptly available." ECF No. 23, at 8. SELC seeks a production completion date of March 31, 2020.

CEQ has not, and is not, violating FOIA. Instead, CEQ, an executive agency with a small staff and small budget, has conducted searches and started reviewing and producing responsive documents to SELC's admittedly broad request. This case is about an agency with less than two dozen employees and a budget of under $3 million per year that is responding in good faith and reasonably promptly to FOIA requests while also performing its core mission under a number of federal laws[1], including overseeing all federal agency implementation of the requirements of the

---

[1] CEQ's mission is impacted by all of the following federal statutes: Clean Air Act, 42 U.S.C. § 7609; the Aquatic Nuisance Prevention and Control Act, 16 U.S.C. § 4751; the Department of Energy Organization Act of 1997, 42 U.S.C. § 7265; the Endangered Species Act, 16 U.S.C. § 1536; the Global Change Research Act of 1990, 15 U.S.C. § 2932; the Marine Mammal

1

National Environmental Policy Act (NEPA) through promulgation and interpretation of Government-wide regulations, the subject matter of which SELC's instant FOIA request centers.

Under the facts and circumstances of this case CEQ has responded in a reasonably prompt manner and is not in violation of FOIA. Moreover, CEQ anticipates that it will be in a position to provide documents monthly beginning this month (January 2020) and complete its production by November 2020. Accordingly, summary judgment should be denied for SELC and should be granted in favor of CEQ.

## STANDARD OF REVIEW

### I.     Rule 56 Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If the evidence of a dispute of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.[2]

FOIA challenges should generally be resolved on summary judgment, and typically involve legal questions regarding redactions, exemptions, or other post-production issues. *See, e.g., Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004); *Turner v.*

---

Protection Act, 16 U.S.C. §§ 1401-03; the National Climate Program Act of 1978, 15 U.S.C. § 2904; the National Environmental Education Act, 20 U.S.C. §§ 5506-8; the Nuclear Waste Policy Act, 42 U.S.C. §§ 10132, 10134, and 10193; the Toxic Substances Control Act, 15 U.S.C. § 2603(e)(2)(A)(iii); the Moving Ahead for Progress in the 21st Century Act, 23 U.S.C. § 139; and the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5189g.
[2] Internal quotations and citations omitted throughout.

*United States*, 736 F.3d 274, 282 (4th Cir. 2013); *S. Evnt'l Law Ctr. v. Mick Mulvaney*, No. 3:18cv00037, 2019 WL 4676697, at *4 (W.D. Va. Sept. 25, 2019); *Hill v. Executive Office for the U.S. Attorneys*, No. 4:17-cv-00027, 2018 WL 736295, at *3 (W.D. Va. Feb. 6, 2018).  In a FOIA action, summary judgment is typically appropriate where "no material facts are in dispute and [the agency] demonstrates that each document that falls within the class requested either has been produced, is identifiable, or is exempt from the Act's inspection requirements." *Carter, Fullerton & Hayes, LLC v. U.S. Fed. Trade Comm.*, 601 F. Supp. 2d 728, 734 (E.D. Va. 2009); *see also McCoy v. United States*, No. 1:04cv101, 2006 WL 463106 at *5 (N.D.W.Va. Feb. 24, 2006).

## ARGUMENT

### I. CEQ Has Not Violated FOIA

#### a. CEQ has acted in good faith and with due diligence

As SELC rightfully points out, FOIA requires a governmental agency to make properly requested documents "promptly available" to a requestor.  5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(C)(i).  FOIA, however, neither defines "promptly available" nor does FOIA proscribe any time limitation for production.  At this stage, CEQ has identified all records that could be responsive to SELC's FOIA request, has produced over 1200 records to date, intends to provide documents monthly beginning this month, and complete its production of responsive documents by the end of November 2020.  *See Carter*, 601 F. Supp. 2d at 734; *McCoy*, 2006 WL 463106 at *5; *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).  Here, CEQ has produced or identified all potentially responsive documents and summary judgment in favor of CEQ is appropriate.

Moreover, as courts have noted, "good faith effort and due diligence are the touchstones underlying FOIA's statutory scheme," and where an agency is able to demonstrate that it has

engaged in due diligence in processing and responding to the request, the requestor should not be granted summary judgment as SELC seeks here.  *Judicial Watch, Inc. v. U.S. Dep't of Homeland Security*, 895 F.3d 770, 783 (D.C. Cir. 2018) (quoting *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Dir. 1976).  In addition to a good faith effort and due diligence, a government agency is required "to conduct a reasonable search for responsive records and must establish that it has made a good faith effort to conduct a search for the requested records using methods which can be reasonably expected to produce the information requested."  *Carter*, 601 F. Supp. 2d at 734 (quoting *McCoy*, 2006 WL 463106 at *5).  In turn, "[a]n agency may prove the reasonableness of its search through affidavits of responsible agency officials as long as the affidavits are relatively detailed, nonconclusory and submitted in good faith."  *Id.*  Here, CEQ has put forth, and continues to put forth, a good faith effort and is diligent in processing and producing responsive records pursuant to SELC's request.

### b. CEQ's FOIA Liaison Howard C. Sun confirms that CEQ has met its legal obligations under FOIA

The Second Declaration of Howard C. Sun, Attorney Advisor and FOIA Public Liaison for CEQ, more than satisfies the standards set out in *Carter* and *McCoy* and confirms that CEQ has been diligent in its endeavor to comply with FOIA.  Mr. Sun's declaration also supports summary judgment in favor of CEQ.  CEQ began working on SELC's initial FOIA request on the same date it was received, July 19, 2018. Second Declaration of Howard C. Sun, ¶6.  On that day, Mr. Sun began discussing SELC's request with Aaron Szabo, a CEQ subject matter expert on regulations. *Id.*  Messrs. Sun and Szabo had at least one other face-to-face meeting regarding SELC's request and soon thereafter, they decided on the following search terms: ("Advanced Notice of Proposed Rulemaking" OR ANPRM OR ANOPR OR ANPR) AND (NEPA or "national environmental policy act").  *Id.*  Moreover, Messrs. Sun and Szabo determined that the search terms should be

4

applied across all CEQ custodians between January 1, 2017 and July 25, 2018, the day CEQ finalized the search terms. *Id.*

After determining that SELC's request was a "non-urgent, complex" request, Mr. Sun next coordinated with the Office of Administration's (OA) e-discovery processing team to begin the search. *Id.* at ¶¶6-7.[3] Notably, OA's e-discovery processing team is a team that provides e-discovery search capability across multiple components and agencies within the EOP. *Id.* CEQ is just but one small agency among many that must compete for limited resources in e-discovery processing.

While Mr. Sun was away on military duty, the OA notified CEQ that its search had identified 5,227 unique records. *Id.* at ¶8. CEQ's contractor paralegal immediately began an initial responsiveness review and completed this coding on August 21, 2018. *Id.* Shortly after Mr. Sun returned from military duty, SELC submitted its revised, and broader, FOIA request on September 5, 2018. *Id.* at ¶9. Two days later, Mr. Sun recalls having a phone conversation with SELC acknowledging the revised request. *Id.* at ¶10. Also on September 7, 2018, Mr. Sun met again with Mr. Szabo to discuss how SELC's revised request impacted CEQ's ongoing efforts. *Id.* Messrs. Sun and Szabo concluded that CEQ should perform a second search and incorporate these second search results into CEQ's continuing review of the first set of records. *Id.* CEQ decided on the following expanded search terms for the second search: ("Notice of Proposed Rulemaking" OR ANPRM OR ANOPR OR ANPR) AND (NEPA or "national environmental policy act"). *Id.* The date range was expanded to September 7, 2018, and all CEQ employees were designated as

---

[3] Mr. Sun's Second Declaration provides significant detail about how CEQ determines how to categorize and treat a particular FOIA request. In this case, Plaintiff's request was not submitted on an expedited basis and was deemed to be complex. Mr. Sun's statement also explains in detail how CEQ's goal is to reduce the average wait times for <u>all</u> FOIA requestors. *See* Second Declaration of Howard C. Sun, ¶7.

custodians. *Id.* This broadened search was submitted on March 21, 2019 to OA for processing. *Id.*

Meanwhile, Mr. Sun began a quality assurance check of the contractor paralegal's coding completed in late August 2018. *Id.* at ¶11. Noticing that the work already performed was deficient, Mr. Sun's quality assurance check quickly morphed into a substantive re-review. *Id.* While the re-review progressed, Mr. Sun discovered a technical issue with search results provided by OA on a variety of other pending CEQ FOIA reviews. *Id.* at ¶12. In effect, the OA's search results repeatedly pulled documents into the search that actually fell outside of the date range identified in the search. *Id.* Upon discovering this issue in other FOIA reviews in November 2018, Mr. Sun checked to see if this error occurred in the SELC review and confirmed that the same problem plagued the SELC review. *Id.* at ¶11. CEQ was forced to suspend its review and ultimately decided that, due to the deficiencies in the prior contractor paralegal review, as well as the deficiencies in the original search results' meta-data, CEQ should initiate a fresh, new review. *Id.* Once the meta-data issue was corrected, the number of records from the corrected search results changed to 2,595. *Id.* On December 6, 2018, Mr. Sun assigned a new contractor paralegal specialist to commence review of the corrected body of records. *Id.*

Around the same time, early December 2018, CEQ first learned that SELC had filed the present suit. *Id* at ¶13. Soon afterward, as CEQ continued its processing and review of potentially responsive documents, the United States government shut down and ceased operations until January 25, 2019. Notably, forty-one FOIA requests were in the queue ahead of SELC's request in this case. *Id.* at ¶14. Upon resuming operations, CEQ's queue of FOIA requests had increased by another 20%. *Id.* at ¶15. Despite having to triage these new requests, categorizing them as

simple or complex, CEQ's new contract paralegal completed the initial responsiveness review on February 1, 2019. *Id.* at ¶15.

Following this initial review, CEQ Attorney Caroline Gignoux began the quality assurance check of the records coded by the new contract paralegal as well as a responsiveness review. *Id.* CEQ determined that it would produce records on a rolling basis in batches of 300 records. *Id.* As part of its production process, CEQ consults with any other agencies that may be affected by the production of CEQ's records. *Id.* at p.10. When such situations occur, CEQ coordinates with FOIA personnel from the impacted agencies to solicit comments and feedback, a process which can take multiple weeks. *Id.* As detailed by Mr. Sun, CEQ has coordinated with four separate agencies to date in this case. *Id.*

Next, CEQ must review, analyze, and redact information contained in the records that is exempt from disclosure under FOIA or otherwise protected from disclosure. *Id.* at ¶ 20. Once the redaction process is completed and approved internally, CEQ drafts a production letter to the requestor, documenting the number of pages and redaction instances, as well as the basis for the redactions. *Id.* Finally, CEQ posts the final documents on its website and produces the records to SELC. *Id.*

To date, CEQ has made three productions as follows:

- May 15, 2019: 427 pages containing 736 redaction instances pursuant to 5 U.S.C. § 552(b)(6) and 241 redaction instances pursuant to 5 U.S.C. § 552(b)(5);

- September 19, 2019: 353 pages containing 572 redaction instances pursuant to 5 U.S.C. § 552(b)(6) and 287 redaction instances pursuant to 5 U.S.C. § 552(b)(5);

- December 17, 2019: 459 pages containing 837 redaction instances pursuant to 5 U.S.C. § 552(b)(6) and 279 redaction instances pursuant to 5 U.S.C. § 552(b)(5);

- Next production expected January 2020.

Finally, as discussed above, CEQ conducted a second search based on SELC's revised FOIA request which returned 4,471 unique results, which are currently being coded for responsiveness by CEQ's contractor paralegal as other CEQ staff continue work on interagency coordination, redaction, and production of the original search results. Second Declaration of Howard C. Sun, ¶ 16. CEQ has also collected all potentially responsive paper records, which are being scanned and reviewed for the following custodians: Mary Neumayr, Viktoria Seale, Edward (Ted) Boling, and Mario Loyola.

As detailed by Mr. Sun, and as discussed above, CEQ acted immediately upon SELC's FOIA request to begin formulating search terms, applying those search terms, reviewing the search results for possible responsiveness, and then undertaking the laborious task of redacting exempt portions of documents and producing the remaining records to SELC. While SELC is unsatisfied with the amount of time it takes such a small agency to respond to such a broad request, courts recognize that there is no one-size-fits-all approach to determining agency compliance with FOIA. *See e.g., Judicial Watch* 895 F.3d 770 at 781 (D.C. Cir. 2008) ("And it is long established in this circuit that an agency's compliance with FOIA depends upon its good faith effort and due diligence … to comply with all lawful demands for records in as short a time as possible."). It is of course true that an agency must not sit idly by or otherwise frustrate the purposes of FOIA by failing to produce responsive records, but SELC has not alleged, nor could it ever prove here, that CEQ has engaged in any sort of policy or practice of purposeful frustration of FOIA, nor could it show that CEQ has exercised anything short of upmost diligence.

### c. CEQ is not the EPA or the FBI

SELC points to four FOIA cases involving the FBI and the EPA ostensibly for the proposition that production of up to 4,000 documents per month is reasonable. Each of the cases cited by SELC, however, support a finding that CEQ, by any reasonable comparison, has been, and continues to be reasonably prompt in reviewing and producing responsive records. For example, in *Seavey v. U.S. Dep't of Justice*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017), the District Court of the District of Columbia ordered the FBI to produce 2,850 pages per month instead of the FBI's proposed 500 pages per month because it would take the FBI over 17 years to complete its production under its own policies. *Id*. Instead, the Court ordered the FBI to complete the production of the remaining 102,000 pages over a period of three years. *Id.*

Similarly, in *Peer v. EPA*, the parties agreed (and the Court accepted the agreement) that the EPA would process at least 1,000 documents per month. But the Court, as well as the parties in that case, recognized that full production would take upwards of three to four additional years to process, review, redact, and produce the 30,000 to 50,000 remaining documents. *See Peer v. EPA*, ECF No. 21, Joint Status Report of May 25, 2017, No. 16-cv-2112 (D.D.C.). While EPA completed its production in 2019, the parties are still negotiating a final resolution. *Peer v. EPA*, ECF No. 45, Joint Status Report of November 22, 2019, No. 16-cv-2112 (D.D.C.). And whether the EPA has agreed to production schedules of 800 or 1,000 documents per month in other Courts, including this Court, is of no import for CEQ or the unique facts and circumstances of this case. Indeed, the other cases referenced by SELC confirm that a bespoke, case-by-case analysis of the agency's actions, its resources, and the nature of the request and responsive records govern the question of whether an agency has exercised due diligence and operated on a good faith basis, or whether an agency has failed to adhere to the standards of FOIA.

Importantly, both the FBI and the EPA dwarf the CEQ, not only in budget, but also in resources. The FBI is an agency that employs nearly 35,000 full time employees and operates with a budget of nearly $9 billion each year.[4] The EPA employs over 14,000 full-time workers and has a budget of $8.85 billion each year.[5] CEQ, by contrast, employs only 16 individuals full-time and houses roughly a dozen individuals on temporary detail at any given time, and operates on a budget of just under $3 million each year. Commensurate with its limited size and budget, CEQ, after increasing its focus on FOIA compliance in recent years, devotes the time of 1.5 full-time attorneys to these requests. *See* Second Declaration of Howard C. Sun, p. 9.

In short, the cases cited by SELC regarding other similar large agency productions in response to FOIA requests confirm that CEQ's search, review, and production satisfies the requirements of FOIA. The differences between CEQ, the EPA, and the FBI could not be more staggering:

- FBI's and EPA's budgets are each approximately 3,000 times larger than CEQ's budget
- FBI's workforce is nearly 1,500 times larger than CEQ's workforce
- EPA's workforce is roughly 580 times larger than CEQ's workforce

In stark terms, for every FOIA request received, CEQ must devote 14 times more manpower to process and produce records than does the FBI, and CEQ must devote more than 7 times the

---

[4] Christopher Wray, Statement Before the Senate Appropriations Committee, Subcommittee on Commerce, Justice, Science, and Related Agencies, May 16, 2018, available at https://www.fbi.gov/news/testimony/fbi-budget-request-for-fiscal-year-2019 (last visited Jan. 20, 2020).

[5] EPA's Budget and Spending, available at https://www.epa.gov/planandbudget/budget (last visited Jan. 13, 2020).

manpower than does the EPA.[6]  SELC's attempted comparisons confirm just how much of a good faith effort and due diligence that CEQ has put into responding to SELC's FOIA request.

## CONCLUSION

For all of the foregoing reasons, CEQ has amply demonstrated that it has complied with the letter and spirit of FOIA, and continues to do so.  Accordingly, summary judgment should be granted to CEQ and SELC should be denied summary judgment at this stage.

                          Respectfully submitted,

                          THOMAS T. CULLEN
                          United States Attorney

Date:  January 13, 2020                */s/ Justin Lugar*
                                          Justin Lugar
                                          Assistant United States Attorney
                                          Virginia State Bar No. 77007
                                          P. O. Box 1709
                                          Roanoke, VA  24008-1709
                                          Telephone: (540) 857-2250
                                          Facsimile: (540) 857-2283
                                          E-mail:  justin.lugar@usdoj.gov

---

[6] 10,442 total EPA requests 2018 = 0.75 FOIA requests per EPA employee; 17,862 total FBI = 0.5 FOIA requests per employee; 167 CEQ = approximately 7 FOIA requests per employee.

CERTIFICATE OF SERVICE

I hereby certify that January 13, 2020, I caused a true copy of the foregoing Motion for a Stay of an Answer in light of the United States Government Cessation to be electronically filed with the Clerk of the Court using the CM/ECF system which will provide copies to all counsel of record.

*/s/ Justin Lugar*
Justin Lugar
Assistant United States Attorney