IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 3:18CV00113 |
| v. | ) **MEMORANDUM OPINION** ) ) |
| COUNCIL ON ENVIRONMENTAL QUALITY, | ) By: Hon. Glen E. Conrad ) Senior United States District Judge ) |
| Defendant. | ) ) |

This matter is before the court on Plaintiff Southern Environmental Law Center's ("SELC's") Motion for a Preliminary Injunction in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, action against the Council on Environmental Quality (the "Council").

## Background

The court begins its opinion by discussing both the facts at issue and the history of several relevant pieces of legislation. Much of the court's holding rests on the interplay of those statutes. Additional information provides context for SELC's requests.

### *The Administrative Procedure Act*

The Administrative Procedure Act, Pub. L. 79–404, 60 Stat. 237–244 (1946), governs federal agency procedures. When enacted, Section 3 of the Act was titled "Public Information," and required agencies to make certain information available to the public. Section 4 sets forth the process through which federal agencies engage in rulemaking; often that means issuing regulations. See 5 U.S.C. § 553.

### *FOIA*

In 1966, "Congress enacted FOIA to overhaul the public-disclosure section"—section 3— "of the Administrative Procedure Act . . . . That section . . . was plagued with vague phrases and

gradually became more a withholding statute than a disclosure statute." Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011) (internal quotation marks omitted); Pub. L. No. 89-487, 80 Stat. 250 (1966) (amending section 3 of the Administrative Procedure Act). FOIA reflects "a general philosophy of full agency disclosure" unless the government can prove that the requested information is exempt under the statute. Dep't of Air Force v. Rose, 425 U.S. 352, 360–61 (1976); 5 U.S.C. § 552(a)(4)(B). FOIA "shines a light on government operations to check against corruption and to hold the governors accountable to the governed." Coleman v. Drug Enf't Admin., 714 F.3d 816, 818–19 (4th Cir. 2013) (internal quotation marks omitted).

Congress has amended FOIA several times, often due to concerns with agencies' slow responses to FOIA requests. For example, Congress amended FOIA in 1974 due to concerns with "bureaucratic delay" in FOIA processing, and "[t]he lack of priority given" to FOIA compliance "by top-level administrators." S. Rep. No. 93-854, at 155, 175–178 (1974). Congress again amended FOIA in 1996, noting that "[c]hronic delays in receiving responses to FOIA requests [were] the largest single complaint" of FOIA requesters. S. Rep. No. 104-272, at 10, 28–29 (1996).

### *NEPA and the Council*

The National Environmental Policy Act of 1969, codified at 42 U.S.C. §§ 4331 et seq. ("NEPA"), requires "that [an] agency has taken a hard look at [the] environmental consequences" of certain agency actions affecting the environment. Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21 (1976). NEPA itself does not require that the agency reach a particular substantive result. See Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989). Instead, NEPA imposes procedural, information-gathering requirements. These requirements are meant to "ensure[] that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." Id. at 349.

2

To that end, NEPA has two primary goals. First, the statute makes sure that agencies "consider every significant aspect of the environmental impact of a proposed action . . . ." Baltimore Gas and Elec. Co. v. Nat. Res. Def. Council, Inc., 462 U.S. 87, 97 (1983) (internal quotation marks omitted). Second, NEPA serves an accountability function: the statute provides assurance to the public that an agency has actually considered the information that it should. Id.

As is relevant to this case, NEPA also established the Council as an agency[1] within the Executive Office of the President to help implement NEPA's goals. 42 U.S.C. §§ 4342, 4344. In 1978, the Council enacted regulations on the procedural aspects of NEPA. 43 Fed. Reg. 55978 (Nov. 29, 1978) (codified at 40 C.F.R. 1500 et seq.); Andrus v. Sierra Club, 442 U.S. 347, 356–58 (1979). These regulations have been substantively changed just once before, in 1986. See 40 C.F.R. 1502.22; ECF No. 32 at 2–4 (describing additional regulatory history).

### *The Council's Advanced Notice of Proposed Rulemaking*

On June 20, 2018, the Council published an advance notice of proposed rulemaking titled "Update to the Regulations for Implementing the Procedural Provisions of [NEPA]." 83 Fed. Reg. 28591 (June 20, 2018) (the "Advance Notice"). The Advance Notice stated that the Council was "considering updating its implementing regulations." The Council requested public comments on this proposal, and listed twenty specific questions for the public to answer. Id. at 28591–92. The Council received more than 12,500 public comments in response. ECF No. 32 at 4. SELC submitted several comments itself, and also joined in other comments. See ECF Nos. 28-1, 28-2.

### *SELC's Pending FOIA Requests and the Instant Action*

SELC is a 501(c)(3) non-profit organization that works to "protect the natural resources" of the Southeastern United States and, "in particular, to gather, analyze, and disseminate public

---

[1] The United States Court of Appeals for the District of Columbia Circuit has ruled that the Council is subject to FOIA. See Pac. Legal Found. v. Council on Envtl. Quality, 636 F.2d 1259, 1261–62 (D.C. Cir. 1980).

3

information about activities affecting human health and the environment" in the region. ECF No. 28-17 ¶ 4. NEPA, which in part serves to educate the public about the environmental consequences of government actions, "is vitally important to SELC's work," and SELC engages in NEPA-related litigation. Id.; see also Compl. ¶ 8–10.

On July 19, 2018, SELC submitted a FOIA request to the Council seeking "all records in the possession of [the Council] that in any way relate to" the Advance Notice. Compl. ¶ 17 & Ex. 1; Answer ¶ 17. On September 5, 2018, SELC submitted a revised FOIA request to the Council. Compl. ¶ 19 & Ex. 2; Answer ¶ 19. This request sought "all records in the possession of" the Council "that in any way relate to [its] proposed rulemaking to update [the Council's] implementing regulations for the procedural provisions of [NEPA], including but not limited to all records that relate to" the Advance Notice. Id.

The Council confirmed that it had received SELC's request on September 7, 2018. Compl. ¶ 22; Answer ¶ 22. On November 14, 2018, SELC emailed the Council to inquire about the status of the request—the Council had not yet responded with a determination. Compl. ¶ 23; Answer ¶ 23. As of November 30, 2018, the Council had failed to issue a determination in response to SELC's FOIA request and had failed to produce any documents. Compl. ¶ 24; Answer ¶ 24. Thereafter, SELC filed this declaratory judgment action asking the court to force the Council to comply with SELC's FOIA requests.

On September 16, 2019, the court denied SELC's motion for judgment on the pleadings. ECF Nos. 18–19. On December 13, 2019, pursuant to the court's briefing order, SELC filed a motion for summary judgment, which asks that the Court compel the Council to comply with SELC's "time-sensitive" FOIA request in an "expeditious fashion." ECF Nos. 21–23. Specifically, SELC requested that the court order the Council to complete document production

4

by March 31, 2020. ECF No. 23 at 3. Under the same briefing order, the Council opposed summary judgment and cross-moved for summary judgment on January 13, 2020. ECF No. 24. The Council argued, in substance, that it is a small agency with a small budget, and is responding to SELC's FOIA request in good faith, and with reasonable promptness under the circumstances. Id. The parties filed their replies on January 28, 2020 and February 12, 2020. ECF Nos. 25 & 26.

SELC filed the instant motion on February 13, 2020. ECF No. 27. In opposing SELC's motion, the Council submitted a sworn declaration from Howard C. Sun, an Attorney Advisor at the Council. Sun stated that the Council has identified 7,066 records that could be responsive to SELC's FOIA request. ECF No. 32-2. According to Sun, this amounts to roughly 15% of the e-discovery work that the Council has done on all FOIA cases since SELC's September 2018 request. Id. To date, the Council has sent five batches of documents totaling around 3,600 pages in response to SELC's FOIA requests: about 11% of the Council's review since September 2018. Id. Sun stated that agency would carry forward with monthly, rolling document productions of roughly 600 pages per month until July 2020, and estimated that the Council would complete production of responsive documents to SELC by November 2020. Id. About 27,000 pages are left to be reviewed, but Sun stated that more than 20,000 of those pages consist of public comments that are imbedded in the Council's records. Id. In sum, less than 7,000 pages remain that would require substantive review. Those documents that have been produced are extensively redacted, but reveal that the Council used interns for screening public comments. ECF No. 28-6.

Sun also described certain challenges that have slowed the Council's document production efforts. ECF No. 32-2. For example, the Council has a small budget and 13 full-time staff members. Id. Another office in the Executive Office of the President, the Office of Administration, must also help the Council gather and process documents. On top of that, if any

documents relate to other federal agencies, the Council allows those agencies to provide comments and feedback on the documents. ECF No. 24-1. In addition, Sun stated that the Council encountered issues with coding and with a contractor who apparently miscoded numerous documents. Finally, the Council has faced a large number of FOIA requests in recent years, which has slowed down its responses to individual requests. Id.

### *The Council's Proposed Rulemaking*

On January 10, 2020, the Council published its 47-page Notice of Proposed Rulemaking in the Federal Register. 85 Fed. Reg. 1684 (Jan. 10, 2020) (the "Proposed Rulemaking"). The Proposed Rulemaking provides that its goal is to "modernize and clarify" current NEPA regulations "to facilitate more efficient, effective, and timely NEPA reviews . . . ." Id. If the Proposed Rulemaking becomes a final regulation, it "would comprehensively update and substantially revise" existing NEPA regulations. Id. at 1684 and 1686.

Although it is not possible to summarize the entire Proposed Rulemaking, some discussion of its substantive provisions is in order. In one example, the Proposed Rulemaking addresses "Environmental Impact Statements." See 42 U.S.C. § 4332(C). Under the extant regulations, only a lead agency, a cooperating agency, or a contractor selected by those agencies can prepare an Environmental Impact Statement. A private party who has proposed a project to which NEPA applies may not prepare an Environmental Impact Statement or select the contractor who prepares it. 40 C.F.R. § 1506.5(c).[2] In addition, contractors must currently certify in writing that they have no "financial or other interest in the outcome of the project." Id. The Proposed Rulemaking would

---

[2] As an example of this regulation in action, in Citizens Against Burlington, Inc. v. Busey, then-Judge Thomas examined a case in which an agency failed to select a contractor to prepare an Environmental Impact Statement. 938 F.2d 190, 201–02 (D.C. Cir. 1991). Instead, the agency delegated parts of that task to a contractor that the project proponent selected, and that contractor failed to fill out a financial disclosure form. Id. The Court held that this error was not harmless. Id. The Court specifically noted that the regulation prohibits "financial *or other interest* in the outcome of the project" by the preparer. Id. (quoting 40 C.F.R. § 1506.5(c)) (emphasis in opinion).

eliminate the restriction on who may prepare an Environmental Impact Statement, and not require contractors to certify that they do not have a conflict of interest. 85 Fed. Reg. 1684, 1704–05.

In another example, existing NEPA regulations require an evaluation of "cumulative impacts." These are defined as "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions . . . ." 40 C.F.R. § 1508.7. The Proposed Rulemaking would delete this definition and no longer require agencies to analyze cumulative impacts. 85 Fed. Reg. 1684, 1707–08.[3]

Further, NEPA requires a detailed statement for major federal actions significantly affecting the quality of the environment and which are "potentially subject to Federal control and responsibility," including where an agency fails to take action. 40 C.F.R. § 1508.18.[4] Under current NEPA regulations, agency policies (including rules, regulations, and interpretations), plans, programs, and project permits can constitute "major federal actions." Id. Under the Proposed Rulemaking, the Council defines the terms "major" and "significant." 85 Fed. Reg. 1684, 1729. The Council proposes to change the definition of a major federal action to "an action subject to Federal control and responsibility with effects that may be significant." Id. "Effects should not be considered significant if they are remote in time, geographically remote, or the product of a lengthy causal chain." Id. An action under the Proposed Rulemaking is not "subject to Federal control" if it is a "non-Federal project[] with minimal Federal funding or minimal Federal involvement where the agency cannot control the outcome of the project." Id.

---

[3] In a decision interpreting this regulation, the United States Court of Appeals for the Fourth Circuit required that the Navy conduct further study on noise and other impacts stemming from nearly 32,000 flights by fighter jets at low altitude and high speed. Nat'l Audubon Soc'y v. Dep't of Navy, 422 F.3d 174, 196 (4th Cir. 2005).

[4] In New York v. Nuclear Regulatory Commission, the D.C. Circuit held that a rulemaking regarding disposal of nuclear waste was a "major federal action" under NEPA. 681 F.3d 471, 476–47 (D.C. Cir. 2012). In contrast, another Court ruled that changes to a wastewater plant and a sewer upgrade that involved no federal money failed to qualify as a "major federal project." Rattlesnake Coal. v. U.S. E.P.A., 509 F.3d 1095, 1102 (9th Cir. 2007).

As a final example, current NEPA regulations require analysis of the environmental consequences of proposals and any alternatives. Under existing regulations, this examination must consider "[d]irect effects and their significance" and "[i]ndirect effects and their significance." 40 C.F.R. § 1502.16.[5] The Proposed Rulemaking would require focus on "effects that are reasonably foreseeable and have a close causal relationship to the proposed action." 85 Fed. Reg. 1684, 1702.

The Council stated on its website that public comment to the Proposed Rulemaking should have been submitted "on or before March 10, 2020." NEPA Regulations, https://web.archive.org/web/20200221170939/https://ceq.doe.gov/laws-regulations/regulations.html (as of Feb. 21, 2020).[6] Soon after the Proposed Rulemaking was published, SELC wrote letters to the Council, requesting an extension of the comment period and additional hearings on behalf of itself and dozens of other public interest organizations. ECF Nos. 28-11 (letter dated January 16, 2019), 28-12 (letter dated January 29, 2020). SELC alleged that the Council has not responded to these letters, as of the date of its motion. SELC also informed the court that the public has submitted over 100,000 comments to the Proposed Rulemaking.

### *The Instant Motion*

In its motion for a preliminary injunction, SELC seeks three alternative forms of relief. First, SELC asks for an accelerated document production schedule with a deadline of March 10, 2020. SELC's second and third requests ask the court to order the Council to delay the close of the public comment period for the Proposed Rulemaking. ECF No. 27. The Council opposes the

---

[5] The D.C. Circuit recently applied this regulation as well. In Sierra Club v. Federal Energy Regulatory Commission, the Court ruled that the agency at issue should have considered greenhouse gas emissions stemming from power plants to which a pipeline would transport gas as an "indirect effect" of the project, or explain why it had not done so. 867 F.3d 1357, 1374 (D.C. Cir. 2017).

[6] See Pohl v. MH Sub I, LLC, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (taking "judicial notice of the contents of WayBack Machine evidence because [it] 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'") (quoting Fed. R. Evid. 201(b)(2) and collecting cases).

8

motion. ECF No. 32. SELC has replied. ECF No. 33.

The parties appeared for oral argument on March 9, 2020. On that day, the court entered an order on SELC's motion. Among other things, the court denied SELC's requests for an injunction extending the notice and comment period, and stated that it would produce an opinion explaining its reasoning soon thereafter. But the court granted SELC's request for an accelerated production schedule, and instructed the parties to meet and confer on an appropriate response date, noting that a March 10 deadline was not feasible. ECF No. 36. Thereafter, the parties informed the court that they had agreed on May 5, 2020, and that the Council need not produce documents consisting only of public comments. ECF No. 39.

## Standard of Review

"Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). They are "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To receive a preliminary injunction, SELC must satisfy four requirements. Id. at 20. First, SELC must show "that [it] is likely to succeed on the merits." Id. Second, SELC must establish "that [it] is likely to suffer irreparable harm in the absence of preliminary relief." Id. Third, SELC must demonstrate "that the balance of equities tips in [its] favor." Id. Fourth, SELC must convince the court "that an injunction is in the public interest." Id.

## Discussion

### I. SELC'S REQUESTS TO ENJOIN THE NOTICE AND COMMENT PERIOD

SELC's second and third requests for relief raise similar issues, and thus, the court addresses them together. As stated during the March 9 hearing, the court does not believe that FOIA's grant of injunctive power permits the court to enjoin the Council from closing the notice

9

and comment period for the Proposed Rulemaking. Alternatively, even if it did have the authority to grant such an injunction, the court concludes that SELC has not made the requisite showing.

"Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978). "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation," nor "reject the balance that Congress has struck in a statute." United States v. Oakland Cannabis Buyers' Co-op., 532 U.S. 483, 497 (2001) (internal quotations omitted).

Thus, before considering the merits of SELC's motion, the court must determine whether it has the power to grant all the relief that SELC seeks. SELC cites to a decision from the United States Supreme Court stating that FOIA grants courts the power to "enjoin agency action pending the resolution of an asserted FOIA claim." Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 18–20 (1974). "Once invoked, the scope of a district court's equitable powers . . . is broad, for breadth and flexibility are inherent in equitable remedies." Brown v. Plata, 563 U.S. 493, 538 (2011) (internal quotation marks omitted) (affirming injunction under Prison Litigation Reform Act). This is especially so where, as here, "federal law is at issue and 'the public interest is involved,' [as] a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.'" Kansas v. Nebraska, 574 U.S. 446, 465 (2015) (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946)); Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 846 F.3d 1235, 1242 (D.C. Cir. 2017) ("CREW II") ("This circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief.").

Upon review of the parties' arguments and the relevant authority, the court concludes, however, that FOIA and Bannercraft Clothing do not permit the court to enjoin an agency from closing a notice and comment period for a non-final proposed rulemaking, even if that agency has likely violated FOIA by failing to produce documents that are responsive to a timely FOIA request and that are directly relevant to the proposed rulemaking at issue. Indeed, the court is convinced that the essential reasoning of Bannercraft Clothing mandates this result. Perhaps for that reason—as far as the court has been able to tell and as SELC concedes—no court has ever granted such an injunction.

The court begins by looking to the Supreme Court's decision in Bannercraft Clothing. In that case, the plaintiffs were government contractors whose contracts were undergoing renegotiation under the Renegotiation Act of 1951. See Bannercraft Clothing, 415 U.S. at 13–16 (describing process of determining contractor profits under the Act).[7] The plaintiffs sought documents related to that process in a FOIA request. The trial court had ordered the agency to stop renegotiating the plaintiff's contracts due to the pending FOIA request. Id. at 3–10. The Supreme Court noted that FOIA grants courts jurisdiction to order injunctive relief. Id. at 18–20. The provision now numbered 5 U.S.C. § 552(a)(4)(B) grants courts authority to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."[8] The Court next considered the scope of this power, recognizing that Congress "to a definite degree," made district courts "the enforcement arm" of FOIA. Bannercraft Clothing, 415 U.S. at 18–20. Relying on the "truism that Congress knows how to

---

[7] The Renegotiation Act established a Board, whose functions were excepted from the Administrative Procedure Act except for its public information section. Id. at 13–14.

[8] See Bannercraft Clothing, 415 U.S. at 13 n.10.

11

deprive a court of broad equitable power when it chooses so to do," the Court concluded that "there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court." Id. Thus, the "principle of a statutorily prescribed special and exclusive remedy is not applicable to FOIA cases." Id. Yet the Court did not decide "whether, or under what circumstances" courts should enjoin agency action under FOIA. Id.[9] Instead, the Supreme Court concluded that the plaintiffs' rights to information should have been analyzed under the Renegotiation Act, which was expressly designed by Congress for determining contractor rights. Id. at 20–26. The Court ruled that the plaintiffs had not exhausted their rights under the Renegotiation Act, and thus, could not resort to FOIA. Id. With this scheme in place, the Court found that "[n]othing new by way of due process emerged with [] FOIA" and "[n]othing" in FOIA indicated that "Congress wished to change the Renegotiation Act's purposeful design" to permit "interruption for judicial review." Id. at 22. "[W]ere it otherwise, the effect would be that renegotiation, and its aims, would be supplanted and defeated by [a] FOIA suit." Id. at 20. In particular, the Court noted a concern with "delay through resort to preliminary litigation over [a] FOIA claim," and reversed the order affirming the injunction. Id. at 23–26.

Subsequently, in Chrysler Corporation v. Brown, the Supreme Court clarified FOIA's grant of equitable power. 441 U.S. 281, 290–94 (1979).[10] The Court held that FOIA "is exclusively a

---

[9] Thus, the Court's analysis of FOIA's grant of injunctive relief in Bannercraft Clothing was not essential to the Court's holding, and was not an alternative ground for its decision. Accordingly, the court believes that the analysis is best viewed as dicta. New York Pub. Interest Research Grp., Inc. v. Whitman, 214 F. Supp. 2d 1, 4 (D.D.C. 2002) (recognizing that Bannercraft Clothing's analysis of FOIA was dicta). That does not mean, however, that this court can simply disregard the Supreme Court's textual reasoning, as suggested by the Council. See Manning v. Caldwell, 930 F.3d 264, 281–82 (4th Cir. 2019) (Courts "routinely afford substantial, if not controlling deference to dicta from the Supreme Court. Respect for the rule of law demands nothing less . . . .") (internal citations omitted); but see South Carolina v. United States, 907 F.3d 742, 761 (4th Cir. 2018) (when determining court's power under a statute "a generalized and disconnected observation" in case law "cannot undermine the clear statutory text").

[10] Certain decisions in this period affirmed courts' broad authority to enjoin agency enforcement actions based on pending FOIA requests without significant analysis, but generally declined to actually rule that injunctions were proper. See Lewis v. Reagan, 660 F.2d 124, 128–29 (5th Cir. 1981); Columbia Packing Co. v. U.S. Dep't of Agric., 563 F.2d 495, 497–501 (1st Cir. 1977); Sears, Roebuck & Co. v. N.L.R.B., 473 F.2d 91, 93–94 (D.C. Cir. 1972), cert.

12

disclosure statute," and "that Congress did not design the FOIA exemptions to be mandatory bars to disclosure." Id. (reasoning in part that the grant of equitable power "does not give the authority to bar disclosure"). Thereafter, courts have focused on enjoining agency actions more or less directly related to withholding or producing agency records. See, e.g., CREW II, 846 F.3d at 1241–44 (applying Bannercraft Clothing, affirming that injunction could be brought regarding an agency's "policy or practice" of nondisclosure, but not to force agency to make an index of documents available to the public, and stating "[a]lthough broad, courts' remedial authority under [FOIA] section 552(a)(4)(B) is not boundless") (citing Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136 (1980)).[11]

The court next considers the structure and history of the relevant statutes, as the Supreme Court did in Bannercraft Clothing. In Milner v. Department of Navy, the Supreme Court recounted that FOIA, and its purpose, is woven into the Administrative Procedure Act: "Congress enacted FOIA to overhaul the public-disclosure section of the Administrative Procedure Act[.]" Milner, 562 U.S. at 565 (emphasis added). SELC has provided no evidence that Congress intended to implicitly amend the Administrative Procedure Act's rulemaking procedures when Congress only modified the public disclosure portion of the Act via FOIA. See Markham v. Cabell, 326 U.S.

---

denied, 415 U.S. 950 (1974). For its part, the United States Court of Appeals for the Fourth Circuit discussed the relevant language from Bannercraft Clothing only in the context of injunctions related to document production. See Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190, 1199 n.13, 1204–05 (4th Cir. 1976) (addressing request for injunction to prevent document disclosure, stating "as we understand" Bannercraft Clothing, "its reference to federal equity jurisdiction in this area is concerned with exempt information under [] FOIA.") abrogation recognized in Acumenics Research & Tech. v. U.S. Dep't of Justice, 843 F.2d 800, 803–04 (4th Cir. 1988); Sears v. Gottschalk, 502 F.2d 122, 128 n.13 (4th Cir. 1974) (affirming denial of injunction to produce patent applications).

[11] Other Courts' recent understandings of FOIA's grant of injunctive power are in accord. See Coleman, 714 F.3d at 828 (remanding, in part, to "decide whether to use [the] injunctive authority under FOIA to 'order the production of any agency records improperly withheld from the complainant'") (quoting 5 U.S.C. § 552(a)(4)(B)); Morley v. CIA, 508 F.3d 1108, 1120 (D.C. Cir. 2007) (ordering district court on remand to direct an agency to search specific sets of documents); Kennecott Utah Copper Corp. v. U.S. Dep't of Interior, 88 F.3d 1191, 1202–03 (D.C. Cir. 1996) (FOIA granted no power to require "publication" of documents to the public but only "production" to the "complainant") (citing Chrysler Corp., 441 U.S. at 292).

13

404, 411 (1945) ("[T]he normal assumption is that where Congress amends only one section of a law, leaving another untouched, the two were designed to function as parts of an integrated whole.").

Rather, if the court were to conclude that it had the power under FOIA to enjoin the notice and comment period for the Proposed Rulemaking, it would disrupt the "purposeful design," Bannercraft Clothing, 415 U.S. at 22, of another statute: the rulemaking provisions of the Administrative Procedure Act, which limit what kind of relief courts may grant regarding rulemaking. As the Supreme Court ruled in Vermont Yankee, Section 4 of the Act

> established the maximum procedural requirements which Congress was willing to have the courts impose upon agencies in conducting rulemaking procedures. Agencies are free to grant additional procedural rights in the exercise of their discretion, but reviewing courts are generally not free to impose them if the agencies have not chosen to grant them.

Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc., 435 U.S. 519, 524 (1978) (footnote omitted); accord Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 102 (2015) (overturning doctrine that created "a judge-made procedural right" that was inconsistent the "maximum procedural requirements" set forth in the Administrative Procedure Act).

The court is convinced that granting full relief to SELC would do just what Vermont Yankee forbids. Section 4, 5 U.S.C. § 553(c), requires only that "the agency shall give interested persons an opportunity to participate in the rule making." It does not require that agencies comply with directly relevant FOIA requests to allow for more discerning public comment. Thus, the court concludes that if Congress had wished to include such a requirement when it amended the Administrative Procedure Act through FOIA, it would have.

Finally, it must be recognized that under the Administrative Procedure Act, parties may only seek judicial relief from "[a]gency action made reviewable by statute and final agency action

14

for which there is no other adequate remedy . . . ." 5 U.S.C. § 704; see also Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (discussing finality requirements). At that point, courts may examine "preliminary, procedural, or intermediate agency action" after "the final agency action." 5 U.S.C. § 704; see also, e.g., Int'l Union v. M.S.H.A., 626 F.3d 84, 94 (D.C. Cir. 2010) (remanding with an order to explain a rulemaking or reopen the notice and comment period); Envtl. Integrity Project v. E.P.A., 425 F.3d 992, 995–98 (D.C. Cir. 2005) (vacating rule for agency's failure to comply with notice and comment obligations because final rule was not a "logical outgrowth" of the proposed rule).

The court does not believe that Congress intended to expressly prevent courts from reviewing agency action before it is "final" in one statute, § 704, but at the same time, permit courts to insert their power into preliminary agency action—by implication only—in FOIA. See Posadas v. Nat'l City Bank of New York, 296 U.S. 497, 503 (1936) ("Where there are two acts upon the same subject, effect should be given to both if possible," and any "intention of the legislature to repeal" another statute "must be clear and manifest."). In this case, enjoining the Council from closing the notice and comment period for the Proposed Rulemaking would have the practical effect of inserting judicial review into the rulemaking process before a rule becomes final. The court sees no indication that Congress intended this result either. See Bannercraft Clothing, 415 U.S. at 22 (finding no intent to allow "interruption for judicial review").

Thus, this court interprets FOIA's grant of injunctive power in the same way that the Supreme Court has when faced with analogous questions. In each such case, the Court declined to rule that FOIA was intended to disrupt other statutory schemes. See N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214, 216, 238–43 (1978) (noting that "[t]he potential for delay and for restructuring of the [Board's] routine adjudications of unfair labor practice charges from [FOIA]

requests" was "not insubstantial"); Kissinger, 445 U.S. at 154 (concluding that "Congress never intended when it enacted [] FOIA, to displace the statutory scheme embodied in the Federal Records Act and the Federal Records Disposal Act" and finding support in "Bannercraft Clothing . . . and . . . Robbins Tire & Rubber . . . , both demonstrating reluctance to construe [] FOIA as silently departing from prior longstanding practice"). The court concludes that it must rely on the core analysis of Bannercraft Clothing, and that of subsequent authority.

Accordingly, the court is convinced that it cannot grant the second and third forms of relief sought by SELC. The Administrative Procedure Act—and a robust body of case law—allows for enforcement mechanisms if agencies fail to comply with preliminary matters in rulemaking procedures. See 5 U.S.C. § 704.[12] This court concludes that FOIA does not.

## II. SELC'S REQUEST FOR A PRODUCTION ORDER

As stated at oral argument and held in the court's order, the court believes that SELC has shown that it is entitled to a production order related its FOIA requests, and that the establishment of a production deadline is a prudent measure to ensure prompt production. The court concludes that the May 5, 2020 deadline, as agreed upon by the parties, serves that purpose.

---

[12] The court is also of the opinion that this potential for future relief precludes a finding that SELC is likely to suffer irreparable harm, as would be necessary to grant SELC a preliminary injunction on the merits. Winter, 555 U.S. at 20. Moreover, SELC can only speculate as to what information will be turned over by the Council, which further bars such a finding. See PacifiCorp v. E.P.A., No. 13-CV-02187, 2013 WL 5799953, at *6 (D. Colo. Oct. 28, 2013); Landmark Legal Found. v. E.P.A., 910 F. Supp. 2d 270, 275–76 (D.D.C. 2012).

A preliminary injunction would not be in the public interest for much the same reasons that the court holds that it does not have the power to enjoin the notice and comment period. The court simply believes that the public interest is best served through resort to the Administrative Procedure Act, not FOIA. See Oakland Cannabis Buyers' Co-op., 532 U.S. at 498 (when considering the public interest, a "court is limited to evaluating" the proffered public interest arguments that "are affected by the selection of an injunction over other enforcement mechanisms"); Winter, 555 U.S. at 24–32 (ruling that public interest did not support delays of long-planned naval training in the interest of another statute with public disclosure aims: NEPA); Bannercraft Clothing, 415 U.S. at 23 ("Seeking injunctive relief during the pendency of renegotiation encourages delay through resort to preliminary litigation over an FOIA claim.").

## Conclusion

As held in its prior order and explained more fully herein, the court concludes that it is without authority to grant SELC's second and third requests for injunctive relief. However, the court believes that SELC is entitled to an order requiring accelerated document production. The Council shall complete its response to SELC's FOIA request by the agreed-upon date of May 5, 2020.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 18th day of March, 2020.

/s/ Glen Conrad<br>
Senior United States District Judge