IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| SOUTHERN ENVIRONMENTAL LAW CENTER, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:18CV00113 |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) | By: Hon. Glen E. Conrad |
| COUNCIL ON ENVIRONMENTAL QUALITY, | ) ) ) | Senior United States District Judge |
| Defendant. | ) ) | |

Plaintiff Southern Environmental Law Center ("SELC") filed this action against the Council on Environmental Quality ("CEQ"), seeking to compel the disclosure of records requested under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This opinion sets forth the court's rulings on documents submitted for in camera review.

**Background**

SELC sent its first FOIA request to CEQ on July 19, 2018, seeking production of "all records in the possession of the Council on Environmental Quality ('CEQ') that in any way relate to CEQ's Advance Notice of Proposed Rulemaking ('ANPRM') titled 'Update to the Regulations for Implementing the Procedural Provisions of the National Environmental Policy Act' published in the Federal Register on June 20, 2018." (ECF No. 1.) SELC sent an updated request on September 5, 2018. (Id.) After CEQ failed to produce any documents, SELC filed the present action on November 30, 2018, seeking declaratory judgment and an injunction ordering CEQ to produce all nonexempt, responsive documents pursuant to its FOIA request. (Id.) On September 16, 2019, the court denied SELC's motion for judgment on the pleadings. (ECF No. 18.)

On December 13, 2019, SELC filed a motion for summary judgment. (ECF No. 23.) CEQ filed its response in opposition to SELC's motion along with a cross-motion for summary judgment on January 13, 2020. (ECF No. 24.) Before the court ruled on those motions, SELC filed a motion for a preliminary injunction on February 13, 2020. (ECF No. 28.) SELC requested that the court (1) enjoin CEQ from closing the notice and comment period for CEQ's proposed rulemaking and (2) order an accelerated document production schedule with a deadline of March 10, 2020. (Id.) In a March 19, 2020, order, this court denied SELC's request for injunctive relief barring CEQ from closing its notice and comment period but imposed an accelerated production deadline of May 5, 2020. (Id.)

On May 5, 2020, CEQ produced documents in response to SELC's 2018 request. (Pl.'s Mot. Summ. J. 5, ECF No. 43.) However, of the 8,528 pages of documents CEQ produced, 5,014 were fully redacted, and CEQ invoked the deliberative process privilege under Exemption 5 to FOIA 5,775 separate times. (Id.) On June 26, 2020, SELC filed a second motion for summary judgment, requesting that this court order CEQ to produce a detailed Vaughn index and disclose all documents improperly withheld or redacted. (Id. at 2.)

On August 24, 2020, CEQ filed a response in opposition to the motion and a cross-motion for summary judgment. (ECF No. 46.) In its cross-motion, CEQ attached a draft Vaughn index[1] and a declaration of Howard C. Sun (the "Sun Declaration"), Attorney Advisor and FOIA Public Liaison for CEQ. (Id.) SELC filed a response in opposition to CEQ's cross-motion for summary judgment and a rebuttal in support of SELC's motion for summary judgment on September 8, 2020

---

[1] "A 'Vaughn index' is a document supplied by government agencies to opposing parties and the court [in FOIA litigation] that identifies 'each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.'" Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 769 n.4 (9th Cir. 2015) (quoting Wiener v. Fed. Bureau of Investigation, 943 F.2d 972, 977 (9th Cir. 1991)).

(ECF No. 60.) CEQ provided updated Vaughn indexes on October 14, 2020, and October 22, 2020.

The court held a telephonic hearing on the motions on October 23, 2020.[2] In an October 30, 2020 order, the court directed CEQ to produce certain documents to SELC and various records to the court for in camera review. First, the court directed CEQ to produce to SELC the spreadsheets tracking and analyzing comments (Vaughn index lines 43, 94, 107, 110, 187, 342, 564, 566, 1081, 1083, 1085, 1092, 1277, 1280, 1340, 1392, 1398, 1416, 1459, 1464–67, 1470, 1493, 1494, 1498, 1506, 1507). Second, the court ordered CEQ to produce to the court for in camera review the following documents: draft ANPRM fact sheets (Vaughn index lines 160, 162, 164, 166, 272, 274, 276, 292, 294, 296, 457, 459, 461, 631, 633, 1028, 1434, 1442–43); meeting agendas (Vaughn index lines 833, 834, 1020, 1149, 1153, 1423, 1503, 1510, and 1569); emails and meeting invitations regarding CEQ's process for logging, tracking, managing, and analyzing comments (Vaughn index lines 99[3], 1095, 1102, and 1110); emails describing the tasks assigned to members of CEQ's internal NEPA implementing regulations working group (Vaughn index lines 1224 and 1325); and Exhibits G, H, M, and N to SELC's Memorandum in Support of its Motion for Summary Judgment, ECF No. 43.

On November 6, 2020, CEQ requested that the court review in camera the spreadsheets referenced above before ordering their production to SELC. CEQ sent spreadsheets with revised redactions to the court on November 10, 2020. On November 20, 2020, CEQ completed its

---

[2] As to a category of documents consisting of drafts of congressional testimony, draft responses to questions for the record for congressional hearings, and other draft documents related to preparation for the United States Senate confirmation process, the court announced during the October 23, 2020, hearing a preliminary ruling that that CEQ properly redacted or withheld said documents pursuant to FOIA Exemption 5. Having considered the matter further, the court remains convinced that the documents are exempt from SELC's FOIA request.

[3] CEQ notified the court in its November 20, 2020, letter that "based on the context and substance of the Court's order" CEQ determined that the correct document is referenced at Vaughn index line 199, not 99.

production of all requested records for <u>in camera</u> review. The court has reviewed each submitted document and is prepared to rule on the propriety of CEQ's redactions.

## Discussion

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." <u>City of Va. Beach v. U.S. Dep't. Com.</u>, 995 F.2d 1247, 1252 (4th Cir. 1993) (quoting <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978)). FOIA presumes disclosure and "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." <u>Milner v. U.S. Dep't of Navy</u>, 562 U.S. 562, 564 (2011). FOIA exemptions are construed narrowly, and the agency bears the burden of proving an exemption applies. <u>City of Va. Beach</u>, 995 F.2d at 1252. Indeed, "because FOIA established a strong presumption in favor of disclosure, requested material must be disclosed unless it falls <u>squarely</u> within one of the exemptions." <u>Jud. Watch, Inc. v. U.S. Dep't of Com.</u>, 375 F. Supp. 3d 93, 97 (D.D.C. 2019) (emphasis added). If the agency cannot prove that an exemption applies, the court has jurisdiction to enjoin the agency from withholding the requested documents and order their production. 5 U.S.C. § 552(a)(4)(B).

Chiefly at issue in the present matter is the applicability of the deliberative process privilege under "Exemption 5" to FOIA. Exemption 5 excludes from FOIA's ambit "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5). Exemption 5 was designed to encourage open and frank dialogue amongst agency officials and to "protect the quality of administrative decisionmaking by ensuring it is not done in a fishbowl." <u>City of Va. Beach</u>, 995 F.2d at 1252 (internal quotation marks and citation omitted); <u>see also</u> <u>U.S. Dep't of Interior v.</u>

4

Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001). Exemption 5 protects "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).

One privilege commonly asserted pursuant to Exemption 5 is the deliberative process privilege. The deliberative process privilege "encourages free-ranging discussion of alternatives; prevents public confusion that might result from the premature release of such nonbinding deliberations; and insulates against the chilling effect likely were officials to be judged not on the basis of their final decisions, but for matters they considered before making up their minds." City of Va. Beach, 995 F.2d at 1252 (internal quotation marks and citation omitted). Like all FOIA exemptions, the deliberative process privilege "is to be construed narrowly, and the burden rests upon the government to be precise and conservative in its privilege claims." Ethyl Corp. v. EPA, 25 F.3d 1241, 1248 (4th Cir. 1994).

To successfully invoke the deliberative process privilege under Exemption 5, the agency must first prove that the requested materials are both predecisional and deliberative. Id. at 1253. Predecisional materials are those that were "prepared in order to assist an agency decisionmaker in arriving at his decision." Id. (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). Because "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies," the agency need not "identify a specific decision in connection with which a memorandum is prepared." Sears, 421 U.S. at 151-52 nn. 18-19. Deliberative materials illustrate "the give-and-take of the consultative process." City of Va. Beach, 995 F.2d at 1253. Examples of deliberative records include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id.

5

However, the analysis does not end upon the agency's demonstration that the redacted or withheld documents are predecisional and deliberative. First, because FOIA's chief focus is "information, not documents," the government must produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." Id. (quoting 5 U.S.C. § 552(b)). The government therefore may only claim a FOIA exemption "as to segregable portions of records," and FOIA "requires partial disclosure of records reflecting deliberative or policy making processes on the one hand, and purely factual, investigative matters on the other." Ethyl Corp., 25 F.3d at 1250 (internal quotation marks and citation omitted). Indeed, "purely factual material does not fall within the exemption unless it is inexplicably intertwined with policymaking processes such that revelation of the factual material would simultaneously expose protected deliberation." City of Va. Beach, 995 F.2d at 1253 (internal quotation marks and citation omitted).

Finally, even if a record seemingly falls within an enumerated FOIA exemption, the agency must still produce it "if releasing the record would not reasonably harm an exemption-protected interest." Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 72 (D.D.C. 2018) (internal citation omitted). Therefore, to avoid production of even those documents that would otherwise fall within Exemption 5, the agency must also demonstrate that it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A). This foreseeable harm requirement is a "heightened standard." Ctr. for Investigative Reporting v. U.S. Customs and Border Prot., 436 F. Supp. 3d 90, 100 (D.D.C. 2019); Jud. Watch, 375 F. Supp. 3d at 100. That is, the agency must "articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." H.R. Rep. No. 114-391, at 9 (2016). "Generic, across-the-board articulations of harm . . . and boilerplate, nebulous articulations of harm are insufficient." Rosenberg v. U.S. Dep't of Def., 436 F. Supp. 3d 240, 259 (D.D.C. 2020)

(internal quotation marks and citations omitted). Instead, "the agency must provide 'context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure.'" Id. (quoting Ctr. for Investigative Reporting, 436 F. Supp. 3d at 107.)

## I. RECORDS SUBMITTED FOR THE COURT'S REVIEW

As stated previously, CEQ has submitted various categories of documents for the court to review in camera. The court has reviewed the records in their redacted and unredacted forms.

First, CEQ produced to the court the spreadsheets tracking and analyzing comments (Vaughn index lines 43, 94, 107, 110, 187, 342, 564, 566, 1081, 1083, 1085, 1092, 1277, 1280, 1340, 1392, 1398, 1416, 1459, 1464–67, 1470, 1493, 1494, 1498, 1506, 1507.) The files produced include redacted email text and redacted summaries of public comments submitted to CEQ as part of the notice and comment rulemaking process.

Second, CEQ provided draft ANPRM fact sheets (Vaughn index lines 160, 162, 164, 166, 272, 274, 276, 292, 294, 296, 457, 459, 461, 631, 633, 1028, 1434, 1442–43). The submitted files include redacted email text and fully redacted draft versions of the ANPRM fact sheet ultimately published July 11, 2018.

Third, CEQ submitted meeting agendas (Vaughn index lines 833, 834, 1020, 1149, 1153, 1423, 1503, 1510, and 1569). Again, the files include redacted email text and fully redacted agendas for CEQ meetings apparently held in June 2018 and September 2018.

Fourth, CEQ produced to the court various emails and meeting invitations (Vaughn index lines 199, 1095, 1102, 1110, 1224, and 1325). The files include redacted email text and redacted charts. As a general matter, the emails discuss tasks assigned to CEQ staff members and CEQ's management of public comments received as part of the notice and comment rulemaking process.

Finally, CEQ submitted to the court the files comprising Exhibits G, H, M, and N to SELC's Memorandum in Support of its Motion for Summary Judgment, ECF No. 43.  Exhibit G (Vaughn index lines 806 and 808) contains redacted email text and a fully redacted document titled "Response to Agency Comments."  That document appears to be a draft.  Exhibit H (Vaughn index line 815) is a fully redacted draft ANPRM.  The comments to the document only address various changes (such as removing direct quotations) needed to comply with the Office of the Federal Register's publication rules.  Exhibit M (Vaughn index lines 338–49) contains (1) redacted email text providing a broad summary of public comments received in conjunction with CEQ's notice and comment rulemaking process and (2) what appears to be an attached spreadsheet with redacted summaries of public comments received.  Exhibit N (Vaughn index line 960) contains redacted email text discussing the need for CEQ to make edits to ensure compliance with the Office of the Federal Register's publication requirements.

## II. DISCLOSURE WILL NOT HARM AN EXEMPTION-PROTECTED INTEREST

Upon review of each of the submitted records, the court concludes that CEQ has not adequately demonstrated it will suffer a reasonably foreseeable harm from the documents' unredacted production.  To justify its redactions, CEQ cites a "foreseeable harm of chilling speech and stifling frank and open discussions" and a general "risk of public confusion." (Fourth Decl. of Howard C. Sun 7–8, ECF No. 46-1.)  However, the court's in camera review of the documents showed scant risk either potential harm arising.  Simply put, having studied each unredacted document, the court cannot conclude that "disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A).

As stated previously, the foreseeable harm requirement is subject to a "heightened standard."  Jud. Watch, 375 F. Supp. 3d at 100.  Bearing this in mind, and having had the benefit

of reviewing the unredacted documents in camera, the court finds Exemption 5 inapplicable to the records submitted for in camera review. The court therefore orders CEQ to produce fully-unredacted versions to SELC, excluding personal contact information redacted pursuant to FOIA Exemption 6. See 5 U.S.C. § 552(b)(6).

## Conclusion

For the reasons stated, CEQ shall produce to SELC unredacted versions[4] of the following records: spreadsheets tracking and analyzing comments (Vaughn index lines 43, 94, 107, 110, 187, 342, 564, 566, 1081, 1083, 1085, 1092, 1277, 1280, 1340, 1392, 1398, 1416, 1459, 1464–67, 1470, 1493, 1494, 1498, 1506, 1507); draft ANPRM fact sheets (Vaughn index lines 160, 162, 164, 166, 272, 274, 276, 292, 294, 296, 457, 459, 461, 631, 633, 1028, 1434, 1442–43); meeting agendas (Vaughn index lines 833, 834, 1020, 1149, 1153, 1423, 1503, 1510, and 1569); emails and meeting invitations regarding CEQ's process for logging, tracking, managing, and analyzing comments (Vaughn index lines 199, 1095, 1102, and 1110); emails describing the tasks assigned to members of CEQ's internal NEPA implementing regulations working group (Vaughn index lines 1224 and 1325); and Exhibits G (Vaughn index lines 806 and 808), H (Vaughn index line 815), M (Vaughn index lines 338–49), and N (Vaughn index line 960) to SELC's Memorandum in Support of its Motion for Summary Judgment, ECF No. 43.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 14th day of December, 2020.

Senior United States District Judge

---

[4] As stated previously, CEQ need not remove redactions of personal contact information made pursuant to FOIA Exemption 6.